## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KOEUN LEE**,

     Plaintiff,                    Case No. 21-cv-11008

v.                               Honorable Sean F. Cox

**UNITED STATES CITIZENSHIP**     Mag. Judge Curtis Ivy, Jr.
**AND IMMIGRATION SERVICES,**

     Defendants.

## <u>DEFENDANT'S MOTION TO DISMISS OR TRANSFER</u>

Defendant United States Citizenship and Immigration Services, by and through undersigned counsel, moves this Court to dismiss this case for improper venue under 28 U.S.C.A. § 1391 or, alternatively, to transfer it to the Northern District of Georgia or the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) "to avoid unnecessary delay and to protect parties, witnesses, and the public from undue expenses and inconvenience." *Sullivan v. Tribley*, 602 F. Supp. 2d 795, 800 (E.D. Mich. 2009); *see also* 28 U.S.C. § 1404(a). Plaintiff does not reside in the Eastern District of Michigan. There are no necessary witnesses in the Eastern District of Michigan because Plaintiff's claim is under the Administrative Procedures Act and therefore any decision will be made solely on the administrative record. The policies at issue in this complaint originate in Washington and Atlanta.

The decisions at issue in the Complaint were all made in Atlanta. The disposition of this suit and its potential effects do not involve or impact Michigan; any outcome, positive or negative, will only impact the Northern District of Georgia, where Plaintiff previously lived and her application was submitted, considered and rejected, or the District of Massachusetts, where Plaintiff and her husband currently reside.

The grounds for this motion are set forth with further specificity in the attached brief.

Pursuant to Local Civil Rule 7.1, counsel for defendant sought concurrence in this motion on May 25, 2021, but concurrence was not obtained.

Respectfully submitted,

**SAIMA S. MOHSIN**
Acting United States Attorney

*/s/ James Carty*
**JAMES CARTY**
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Office:  (313) 226-9705
Facsimile:  (313) 226-3271
Email:  James.Carty@usdoj.gov
***Attorneys for Defendants***

Dated:  May 25, 2021

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**KOEUN LEE**,

     Plaintiffs,                    Case No. 21-cv-11008

v.                                    Honorable Sean F. Cox

**UNITED STATES CITIZENSHIP**     Mag. Judge Curtis Ivy, Jr.
**AND IMMIGRATION SERVICES,**

     Defendants.

## <u>DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………...vi

I.    INTRODUCTION ……………………………………………………..1

II.   STATEMENT OF FACTS …………………………………………….2

III.  LEGAL STANDARDS …..…………………………………………...6

IV.   ARGUMENT …………………………………………………………8

    a.  This case should be dismissed or transferred for improper
       venue …………………………………………………………………8

    b.  Alternatively, the court should transfer this case under
       28 U.S.C. § 1404(a) to the Northern District of Georgia
       or the District of Massachusetts ……………………………………9

        i.    Plaintiff could have brought this suit in the
            Northern District of Georgia or the District of
            Massachusetts …………………………………………..10

        ii.   The public factors analysis shows that transfer
            to either Georgia or Massachusetts is in the
            interests of justice …………………………………………10

        iii.  The private factors analysis also shows that
            transfer to Georgia or Massachusetts would be
            in the interest of justice …………………………………...14

V.    CONCLUSION ……………………………………………………..18

    CERTIFICATE OF SERVICE ……………………………………………19

## <u>QUESTION PRESENTED</u>

1. Should this case be dismissed for improper venue or transferred to the Northern District of Georgia or the District of Massachusetts because the dispute has no material connection to Michigan, will be decided on the administrative record, and any decision in this suit will impact Massachusetts, not Michigan?

   <u>Defendant states</u>: Yes.

# TABLE OF AUTHORITIES

**Federal Cases:**

*Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734
(E.D. Mich. 2004) ……………………………………..…………….……8

*Colley v. James*, 254 F. Supp. 3d 45 (D.D.C. 2017) …………………………...…13

*DeLoach v. Phillip Morris Cos., Inc.*, 132 F. Supp. 2d 22 (D.D.C. 2000) …………8

*Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214
(E.D. Mich. 1992) …………………………………………………………...8

*Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110 (N.D. Cal. 2014) ………………12

*Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834
(E.D. Mich. 2000) …………………………………………………………...7

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) …………………………….......11

*Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488 (6th Cir. 2016) ………11, 12

*In re Ricoh*, 870 F.2d 570 (11th Cir. 1989) ………………………………………..8

*Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941 (S.D. Ohio 2002) …………11

*Kay v. Nat'l City Mortg. Co*., 494 F. Supp. 2d 845 (S.D. Ohio 2007) ……………14

*Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615 (D. Md. 2002) ………………17

*Mead Corp. v. Oscar J. Boldt Const. Co.*, 508 F. Supp. 193
(S.D. Ohio 1981) …………………………………………………………...17

*Miller v. Insulation Contractors, Inc*., 608 F.Supp.2d 97
(D.D.C. 2009) ………………………………………………………………9

*Miskow v. Boeing Co.*, 664 F.2d 205 (9th Cir.1981), *cert. denied*,
455 U.S. 1020 (1982) ………………………………………………………11

*Nat'l Ass'n of Home Builders v. EPA*, 675 F.Supp.2d 173 (D.D.C.2009) …………15

*Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42 (D.D.C. 2006) ………….16, 17

*Piper Aircraft Co.*, 454 U.S. 235 (1981) ………………………………………….7, 11

*Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*,
    Case No. 12-1089 JEB, 2012 WL 4458446
    (D.D.C. Sept. 27, 2012) ……………………………………………………16

*Quicken Loans Inc. v. RE/MAX, LLC*, 216 F. Supp. 3d 828
    (E.D. Mich. 2016) …………………………………………………………...7

*S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82 (D.D.C. 2004) ……………16

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) …………………………….6

*Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100c(S.D.N.Y.2007) ………..15, 16

*Sullivan v. Tribley*, 602 F. Supp. 2d 795 (E.D. Mich. 2009) ……………………..i, 7

*Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13 (D.D.C. 1996) …….14, 16

*Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988) …………………………………11

*Van Dusen v. Barrack*, 376 U.S. 612 (1964*)* …………………………………………6

*Wayne Cty. Employees' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969
    (E.D. Mich. 2009) …………………………………………………………….6, 15

## Federal Statutes:

28 U.S.C. § 1331 ……………………………………………………………………10

28 U.S.C.A. § 1391 …………………………………………………..i, 6, 8, 9, 12

28 U.S.C.A. § 1391(e)(1) …………………………………………………1, 6, 10

28 U.S.C. § 1404(a) ………………………………………………… i, 6, 9, 10, 11

28 U.S.C. § 1406(a) ……………………………………………………………….6

## I. __INTRODUCTION__

Plaintiff Koeun Lee, a South Korean citizen, asks the Court to find that the denial of her adjustment of status application was arbitrary and capricious under the Administrative Procedures Act and order Defendant to re-adjudicate her application.

This dispute has no material connection to Michigan.

Plaintiff's only contact with Michigan appeared to come on May 22, 2015, when she arrived in the United States at Detroit Metropolitan Airport. It was at that time that she lied to a customs officer about her reason for entering the country.

Plaintiff has never lived in Michigan. There should be no witnesses in Michigan because Plaintiff's claim is under the Administrative Procedures Act and therefore any decision will be made solely on the administrative record. The decisions at issue were made in Atlanta, where Plaintiff lived when she applied for an adjustment of status. The disposition of this suit and its potential effects will only impact Atlanta, and Massachusetts, where Plaintiff and her husband currently reside.

The Court should grant defendant's motion because under 28 U.S.C. § 1391(e)(1), the minimal relationship of the suit to this forum favors dismissal for improper venue or transfer to the location of the controversy, the Northern District of Georgia, or Plaintiff's current home district, the District of Massachusetts.

## II.   <u>STATEMENT OF FACTS</u>

1. Plaintiff Koeun Lee was born in Korea and is currently a citizen of South Korea. (Errata, ECF No. 4, Application to Register Permanent Residence or Adjust Status, PageID.58).

2. Plaintiff's husband, Yoonsoo Na, is currently working in the United States. (*Id*., USCIS Decision dated April 10, 2021, PageID.43).

3. On May 11, 2018, Plaintiff filed a form I-485, Application to Register Permanent Residence or Adjust Status, with U.S. Citizenship and Immigration Services under section 245 of the Immigration and Naturalization Act ("INA") (*Id*., Application to Register Permanent Residence or Adjust Status, PageID.58-74).

4. Plaintiff listed her address as 755 North Avenue, NE, Atlanta, Georgia, an apartment complex. (*Id*. at PageID.58).

5. Plaintiff stated that she last arrived in the U.S. in Atlanta, on October 18, 2017, and was admitted as foreign government staff. (*Id*.)

6. Plaintiff listed her immigration status as A2[1] and stated that she was an employed alien worker. (*Id*. at PageID.59).

7. Plaintiff worked at the South Korean consulate. (*Id*. at PageID.61).

8. Plaintiff stated that her A2 visa would expire on May 9, 2021. (*Id*. at

---

[1] This type of visa is typically issued to foreign citizens with some sort of foreign governmental status.

PageID.58).

9. Plaintiff stated that her husband also lived at the Atlanta address. (*Id*. at PageID.60).

10. On April 10, 2020, a USCIS official working at the USCIS's Atlanta Service Center denied Plaintiff's application. (*Id*., USCIS Decision dated April 10, 2021, PageID.34).

11. USCIS noted that to qualify for the requested status adjustment under Section 245 of the INA, among other qualifications, Plaintiff had to be "admissible to the United States for permanent residence[.]" (*Id*.)

12. USCIS found that Plaintiff was not admissible to the United States because she had previously misrepresented facts to a Customs and Border Protection (CBP) officer while attempting to enter the United States. (*Id*.)

13. Plaintiff acknowledged on her application that she had previously been denied admission to the United States. (*Id*., Application to Register Permanent Residence or Adjust Status, PageID.66, line 14).

14. The incident in question occurred on May 22, 2015, when Plaintiff arrived in the United States at the Detroit Metropolitan Airport in Romulus, Michigan. (Complaint, ECF No. 1, PageID.3-4, at ¶10).

15. Plaintiff initially told the first CBP Officer she spoke with at the primary customs inspection point that she had come to the United States to visit her cousin.

(Errata, ECF No. 4, Sworn Statement dated May 22, 2015, at PageID.54).[2]

16. Plaintiff was then sent to secondary inspection for additional screening and admitted that she did not have any cousins in the United States and had come to America to visit her husband. (*Id.*)

17. When asked why she lied, Plaintiff said, "Because if I said I was visiting my husband maybe you would not let me through and it would be a problem, but I am going back to Korea for sure." (*Id.* at PageID 55).

18. Plaintiff then acknowledged that she had recently quit her job in Korea and had no permanent residence in Korea. (*Id.*)

19. Plaintiff also acknowledged that she was in possession of emails that showed discussions about obtaining a dependent visa. (*Id.*)

20. At the time, Plaintiff was attempting to enter the United States using the Visa Waiver Program and the Electronic System for Travel Authorization (ESTA). The Visa Waiver Program enables citizens of participating countries, such as Korea, to enter the United States for stays of 90 days or less without obtaining a visa. ESTA is an automated system that determines the eligibility of visitors to travel to the United States under the Visa Waiver Program.

21. The CBP customs officer refused Plaintiff's admission to the United

---

[2] Plaintiff was provided with a Korean translator at the secondary inspection point. (Errata, ECF No. 4, Sworn Statement dated May 22, 2015, at PageID.53).

States, stating the following:

> Due to the facts: you are lacking ties to Korea (ie no home, schooling, job at the time), you quit your job, you have information about obtaining/adjusting status to [illegible] and you were not honest with me during your initial interview, you have been found inadmissible to the U.S. pursuant to section 212(a)(7)(A)(i)(I) of the INA as amended. You will be refused admission to the U.S. and returned to Korea on the next available flight.

(*Id*. at PageID.56).

22. The CBP officer also informed Plaintiff that she was no longer eligible to use ESTA and the Visa Waiver Program to enter the United States. (*Id*.)

23. After being denied entry in 2015, Plaintiff later returned to the United States in 2017 as a Korean consular employee and has resided here since that time.

24. Plaintiff appealed the denial of her Application to Register Permanent Residence or Adjust Status, but was again rejected by USCIS officials in the USCIS Atlanta Service Center. (Complaint, ECF No. 1, PageID.6, at ¶24; Errata, ECF No. 4, USCIS Decision dated March 24, 2021, PageID.49-52).

25. Plaintiff timely filed her complaint on May 4, 2021, seeking review under the Administrative Procedures Act asking the Court to find that USCIS's rejection of Plaintiff's application was done arbitrarily and capriciously, and asking the Court to compel USCIS to issue a new decision.

26. Plaintiff lists her current address as Massachusetts in her complaint. (Complaint, ECF No. 1, PageID.2, at ¶4).

### III.   <u>LEGAL STANDARDS</u>

Plaintiff's APA claim is governed by the general federal venue provision 28 U.S.C.A. § 1391, under which a civil action against the United States or its agencies "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. 28 U.S.C.A. § 1391(e)(1). When a case does not meet the venue requirements, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.A. § 1406(a).

This Court also has "broad discretion" under 28 U.S.C. § 1404(a) "to transfer an action […] to avoid unnecessary delay and to protect parties, witnesses, and the public from undue expenses and inconvenience." *Wayne Cty. Employees' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 974 (E.D. Mich. 2009) citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964*)*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

In exercising its discretion, a court must first determine whether the action

could have been brought in the proposed transferee district. *Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000). If this threshold issue is answered affirmatively, courts then consider the other principal factors – convenience of the parties, convenience of witnesses, and the interest of justice – through a balancing of public and private interests. *Quicken Loans Inc. v. RE/MAX, LLC*, 216 F. Supp. 3d 828, 831 (E.D. Mich. 2016) (cleaned up).

The public interest factors are:

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Quicken Loans Inc.*, 216 F. Supp. 3d at 834 quoting *Piper Aircraft Co.*, 454 U.S. at 260 n.6 (internal citation omitted).

The private considerations are:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining unwilling witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Sullivan v. Tribley*, 602 F. Supp. 2d 795, 800 (E.D. Mich. 2009) quoting *Grand Kensington, LLC*, 81 F.Supp. 2d at 836.

A plaintiff's choice of forum is normally entitled to deference, and the party seeking to transfer venue bears the burden of showing that the transfer is proper. *Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214, 220 (E.D. Mich. 1992) (quoting *In re Ricoh*, 870 F.2d 570 (11th Cir. 1989)). "A plaintiff's chosen forum, however, is not sacrosanct, and will not defeat a well-founded motion for change of venue." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 749–50 (E.D. Mich. 2004). "This is especially true where a plaintiff has little or no connection to the chosen forum[,]" *id*., and both the plaintiff and subject matter of the action have a substantial connection with the proposed transferee forum. *DeLoach v. Phillip Morris Cos., Inc.*, 132 F. Supp. 2d 22, 24–25 (D.D.C. 2000). "In such a case, the plaintiff's reason for choosing the forum – and remaining in the forum – is diminished and thus should be given less weight. *Audi AG*, 341 F. Supp. 2d at 749–50.

## IV.  **ARGUMENT**

The minimal relationship of the suit to this forum favors dismissal for improper venue or transfer to the judicial district where the controversy originates, the Northern District of Georgia.

### a.  **This case should be dismissed for improper venue**

This suit does not meet the elements of the general federal venue provision, 28 U.S.C.A. § 1391. Neither party resides in the Eastern District of Michigan. The

8

only event that occurred in Michigan – the denial of entry to the United States in 2015, seemingly while connecting to a flight to Atlanta – took a matter of hours and is not a substantial part of the events or omissions giving rise to this claim.

Plaintiff does not challenge the decision to bar her from the country in 2015 – indeed, there is no legal basis for her to do so. Instead, Plaintiff challenges a decision made in the Northern District of Georgia in 2020. Yes, rejection of Plaintiff's application and appeal involves and is based on the lie she told in Michigan in 2015, but what this suit challenges is not that decision, or the facts of that incident, but the analysis and decision made by USCIS officials in 2020. The only "events or omissions" at issue in this suit, *i.e.* the ones that this Court will ask are arbitrary or capricious, were those that occurred in Atlanta in 2020.

The Court should therefore dismiss or transfer this suit for improper venue under 28 U.S.C.A. § 1391 a28 U.S.C.A. § 1406(a).

### b. Alternatively, the court should transfer this case under 28 U.S.C. § 1404(a) to the Northern District of Georgia or the District of Massachusetts

The minimal relationship of the suit to this forum favors transfer to the judicial district where the controversy originates, the Northern District of Georgia. *Miller v. Insulation Contractors, Inc*., 608 F.Supp.2d 97, 102 (D.D.C. 2009) ("When the events occur in more than one district, a court can consider which jurisdiction has the stronger factual nexus to the claims (under 28 U.S.C. § 1404(a)).")

### i. Plaintiff could have brought this suit in the Northern District of Georgia or the District of Massachusetts

The Northern District of Georgia and the District of Massachusetts are both districts where Plaintiff's suit "might have been brought." *See* 28 U.S.C. § 1404(a). Plaintiff's Complaint raises a question of federal law under the Administrative Procedures Act. (Complaint, ECF No. 1, PageID.2, at ¶30), over which all federal district courts have subject matter jurisdiction. *See* 28 U.S.C. § 1331. As to venue, a civil action against a federal government agency or official may be heard in any district where a defendant resides, where the plaintiff resides, or where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1). Here, Plaintiff lived and worked in Atlanta when she filed her Application to Register Permanent Residence or Adjust Status. USCIS officials working at the USCIS's Atlanta Service Center denied both Plaintiff's application and her appeal. It is indisputable that a substantial part of the events giving rise to this claim occurred in the Northern District of Georgia. Plaintiff also currently resides in Massachusetts.

### ii. The public factors analysis shows that transfer to either Georgia or Massachusetts is in the interests of justice

The disposition of this suit and its potential effects primarily impact Plaintiff and her husband, who have lived in both Massachusetts and Atlanta during the time in question, and employees at the USCIS's Atlanta Service Center. Conversely, this

suit's disposition and its potential effects will not have any unique impact in Michigan, *i.e.* no impact any different than any other judicial district in the country. Given that any impact will occur in Massachusetts or Atlanta, the "local interest in having localized controversies decided at home" favors transfer. *Piper Aircraft Co.*, 454 U.S. at 260, quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).[3]

The Supreme Court has also emphasized the importance of ensuring local issues are decided in their home venue. *See Gulf Oil Corp.*, 330 U.S. at 509 (1947); *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 946 (S.D. Ohio 2002). To evaluate the public factors, "district courts 'must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum.'" *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 500 (6th Cir. 2016) quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988). "The primary local-interest considerations are the parties' connections to the local forum and the location of the injury." *Hefferan*, 828 F.3d at 500.

---

[3] *Gulf Oil* was decided one year before § 1404(a) was enacted and is a *forum non conveniens* case. "The doctrine of *forum non conveniens* in the federal courts was partly displaced with the passage of 28 U.S.C. § 1404, which requires transfer instead of dismissal if the cause can be heard in a more convenient district or division." *Miskow v. Boeing Co.*, 664 F.2d 205, 207, (9th Cir.1981), *cert. denied*, 455 U.S. 1020 (1982). "The factors to be considered under Section 1404(a) are similar to those weighed by courts in determining *forum non conveniens* motions; however, transfers pursuant to Section 1404(a) may be granted '"upon a lesser showing of inconvenience.'" *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002) (cleaned up).

The case involves a dispute centered on the USCIS's Atlanta Service Center. (*See* Complaint, generally.) The challenged decision was made in the Northern District of Georgia. The only event that occurred in Michigan – the denial of entry to the United States in 2015, seemingly while connecting to a flight to Atlanta – is not a substantial part of the events or omissions giving rise to this claim. Where a case predominantly implicates interests in another state and the current venue is one with which the affected citizens have little to no connection, courts have found the local interest compelling and ordered transfer.

For example, *Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1113 (N.D. Cal. 2014), another APA claim, raised the issue of whether the United States Forest Service and employees acting in their official capacities violated federal law by approving salvage timber projects within national forests that had been affected by forest fires. Venue in the Northern District of California was arguably proper under 28 U.S.C. § 1391, because a plaintiff environmental advocacy group was headquartered there. *Id*. at 1113. Defendants moved to transfer venue, asserting that the Northern District had an attenuated connection to the claims, while the Eastern District had the strongest connection, because both national forests, the federal agency and individual federal defendants were located in the Eastern District, and because Plaintiffs had significant contacts in the Eastern District. *Id*. at 1117-19. The court granted the motion to transfer, finding that the only factor against transfer was

the plaintiff's choice of forum. *Id*. at 1120. The court held that the desire to have localized controversies decided at home was decisive in a case where "Plaintiffs also have connections to the transferee forum, which is the only district with significant relevant contacts to the Defendants, to the cause of action, and to the underlying operative facts." *Id*.; *See also Colley v. James*, 254 F. Supp. 3d 45, 71 (D.D.C. 2017) (transferring case to California due to attenuated connections to the District of Columbia).

The Northern District of Georgia and the District of Massachusetts both have ties to this cause of action. The District of Massachusetts has an interest in protecting its residents, the Plaintiff and her husband. Plaintiff, however, was living in the Northern District of Georgia when she filed her application and all relevant decisions concerning that application were made within the district. Further, the underlying legal events which gave rise to this claim, that is the creation and enforcement of immigration rules and regulations, also did not take place in the Eastern District of Michigan. Consequently, it is evident that the Northern District of Georgia has several different relations to this litigation, and the strongest interest in having the case decided there. The District of Massachusetts also has a greater interest than the Eastern District of Michigan.

The relative congestion of the transferor and transferee courts is also a concern. The Eastern District of Michigan is a busier court than that of the Northern

District of Georgia and therefore should not be burdened by a suit with tenuous ties to Michigan and strong ties to Georgia. Statistics on federal caseloads show that the median time interval or case life for a case in the Eastern District of Michigan is 8.3 months, while it is only 5.4 months in the Northern District of Georgia.[4] (Exhibit A, District Court Caseloads, March, 2020) (Most recent report). Transfer to the Northern District of Georgia or the District of Massachusetts also would not cause any undue delay because this case is in its "earliest stages" such that this Court has not had to familiarize itself with the underlying merits of the case. *See Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996) (where case was "in its earliest stages," no delay would result from transfer). Finally, judges in the Northern District of Georgia and the District of Massachusetts are as capable as their colleagues in the Eastern District of Michigan to determine issues of compliance with federal law under the Administrative Procedures Act. *Kay v. Nat'l City Mortg. Co*., 494 F. Supp. 2d 845, 857 (S.D. Ohio 2007) ("[B]oth courts are equally familiar with the controlling law and each would be competent to adjudicate [Plaintiffs' federal] claims.")

---

[4] Conversely, the median time interval in the District of Massachusetts is 12.5 months, which weighs against transfer to that district.

### iii. The private factors analysis also shows that transfer to Georgia or Massachusetts would be in the interest of justice

Where a case predominantly implicates interests and persons in another state and the current venue is one with which the events, parties and witnesses have little to no connection, federal courts have found the local interest compelling and ordered transfer. Given the heavy emphasis courts place on the convenience of the parties and the locus of operative facts, either the Northern District of Georgia or the District of Massachusetts are both more appropriate forums for this action. *See Wayne Cty. Employees' Ret. Sys.*, 604 F. Supp. 2d. at 976 ("Although venue is proper in this district, the operative facts of the case have little material connection to the state" and, therefore, "this factor strongly favors transfer.")

There will be no witnesses in this case; an APA claim is decided on the administrative record. *See Nat'l Ass'n of Home Builders v. EPA*, 675 F.Supp.2d 173, 176 n. 4 (D.D.C.2009) (as "cases reviewed under the APA are generally limited to review of the administrative record, the convenience of witnesses and access to sources of proof do not carry significant weight.") The convenience of the parties, however, favors transfer. Either the Northern District of Georgia or the District of Massachusetts are objectively more convenient forums for the parties. Litigating in Michigan will require Plaintiff to fly to Michigan from Massachusetts, and any USCIS representative to fly from Atlanta or Washington. This factor also favors

transfer to either the Northern District of Georgia or the District of Massachusetts. *See Wayne Cty. Employees' Ret. Sys.*, 604 F. Supp. 2d at 975 quoting *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 106–07 (S.D.N.Y.2007) ("The convenience of the parties [is] oftentimes called 'probably the most important factor in the analysis of whether transfer should be granted[.]'")

The allegations in Plaintiff's Complaint center on USCIS's rejection of her Application to Register Permanent Residence or Adjust Status. Plaintiff was living and working in the Northern District of Georgia when she submitted her application, and all decisions related to her application were made in that district. Plaintiff also asks the Court to order USCIS employees in the Northern District of Georgia to re-adjudicate her application.

Federal courts have transferred cases to the local district where the controversy exists in similar situations, even cases brought in the District of Columbia when the decision at issue was made, approved, or reviewed in Washington. *See, e.g., Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, Case No. 12-1089 JEB, 2012 WL 4458446, at *4 (D.D.C. Sept. 27, 2012); *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 87 (D.D.C. 2004) (citing as an important fact that Utah-based Bureau of Land Management officials were the decision-makers in deciding to transfer case filed in D.C. to Utah); *Trout Unlimited*, 944 F. Supp. at 18 (granting transfer motion where environmental impact statement

16

prepared in Denver and record of decision was signed there); *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 47 (D.D.C. 2006) (transferring case where agency decision-makers located in Florida and disputed decisions were made in Florida).

Here, the connections between this case and Michigan are even less than cases where a plaintiff is asking a federal defendant headquartered in Washington to defend a decision partially made in Washington. Plaintiff does not challenge the decision to bar her from the country in 2015 – indeed, there is no legal basis for her to do so. Instead, Plaintiff challenges a decision made in the Northern District of Georgia in 2020 that has no connection to Michigan. Yes, the decision to reject her application was based on the events that occurred in Michigan in 2015, but given that this is an APA case, those events will be taken at face value and the administrative record and related decisions will be evaluated from a legal standpoint.

Plaintiff's choice of forum favors Michigan. This factor is tempered, however: "Although a plaintiff's choice of forum is ordinarily accorded considerable weight, that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (internal citation omitted); *see also Mead Corp. v. Oscar J. Boldt Const. Co.*, 508 F. Supp. 193, 198 (S.D. Ohio 1981).

Defendant believes that the remaining factors – availability of process to compel attendance of unwilling witnesses, the cost of obtaining witnesses, the practical problems of trying the case most expeditiously, and the interest of justice – are either inapplicable to the facts at issue in this case or neutral.

## V.   **CONCLUSION**

This suit has no operative connection to Michigan and should be dismissed for improper venue or transferred to the United States District Court for the Northern District of Georgia or the United States District Court for the District of Massachusetts for the reasons explained throughout this brief.

Respectfully submitted,

**SAIMA S. MOHSIN**
Acting United States Attorney

*/s/ James Carty*
**JAMES CARTY**
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Office:  (313) 226-9705
Facsimile:  (313) 226-3271
Email:  James.Carty@usdoj.gov
***Attorneys for Defendants***

Dated:  May 25, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 25, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing by electronic mail to the following:

Michael Piston, Esq.
***Attorney for Plaintiff***

/s/ James J. Carty
**JAMES J. CARTY** (P-74978)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Office: (313) 226-9705
james.carty@usdoj.gov